UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TYRONE ROSS, | ) |
|             Plaintiff, | ) |
|             v. | ) No. 1:22-cv-00195-JMS-TAB |
| HEIDI CLOSSIN,<br>KRISTEN HANNAN,<br>KERRI NELSON, | ) |
|             Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING FINAL JUDGMENT**

Plaintiff Tyrone Ross brought this action alleging the defendants violated his right to family integrity from approximately August 2020 to November 2021 by denying him visits with his children. Defendants have moved for summary judgment. Dkt. [61]. For the reasons below, that motion is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Ross failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Ross and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

On June 24, 2019, the Indiana Department of Child Services ("DCS") substantiated a report of neglect of children, T.R. and A.A. ("the children"), by their biological mother, Ms. Andreasen. Dkt. 62-1. Mr. Ross, their biological father, was in the Marion County Jail at the time and not

involved. *Id.*; dkt. 63-1 at 7. On August 2, 2019, Mr. Ross was sentenced to three years of incarceration with 774 days of credit time. Dkt. 63-1. On October 31, 2019, the children were adjudicated children in need of services and wardship was awarded to DCS. Dkt. 62-3. The state court also found that Mr. Ross "has maintained a meaningful role in the children's life" and stated that, at the time of his release, he would receive visitation with the children. Dkt. 62-4 at 2. He was ordered to enroll and participate in programs recommended by the Family Case Manager ("FCM"), who at the time was Defendant Kerri Nelson. *Id.* at 5; dkt. 63-7.

Mr. Ross was released from the Marion County Jail on March 11, 2020. Dkt. 63-3. The state court found Mr. Ross was working with his fatherhood engagement provider and ordered DCS to initiate a visit between the children and Mr. Ross on or before June 19. Dkt. 62-5. That visit occurred virtually on June 18. Dkt. 62-6 at 1. Mr. Ross also attended T.R.'s birthday party in person on June 30 as a supervised visit. Dkt. 62-7. In July 2020, DCS did not schedule any visits between Mr. Ross and the children because Mr. Ross "refused to engage in services and therefore was unable to have a visit." Dkt. 62-8 at 1; *see also* dkt. 62-10 at 6. On August 19, Mr. Ross attended an in-person supervised visit with the children. Dkt. 62-9.

Mr. Ross was arrested on August 26, 2020, and incarcerated in the Marion County Jail. Dkt. 63-4. He was sentenced to two years of incarceration on May 4, 2021, with 335 days of credit time. Dkt. 63-5. Throughout this period of incarceration, Mr. Ross was at the Marion County Jail, the Indiana Department of Correction Reception Diagnostic Center ("RDC"), and the Clinton County Jail. Dkt. 63-6 at 3.

Ms. Nelson was the FCM for the children's case from its inception until March 2021. Dkt. 63-7 at 1. While she held the position, she, her supervisor, and other DCS staff determined it was not in the best interests of the children to have visits with Mr. Ross while he was incarcerated due

to their young age, inability to communicate well virtually or on the phone, lack of pre-existing relationship with Mr. Ross, and T.R.'s ongoing behavioral and emotional issues. *Id.* at 2. Additionally, Mr. Ross himself frequently changed his mind regarding whether he wanted to pursue visitation while incarcerated. *Id.* There were also concerns related to in-person visitation due to the COVID-19 pandemic. *Id.* Ms. Nelson noted in a September 2020 progress report that she intended to work with Mr. Ross to begin in-person visitation again after he was released. Dkt. 62-10 at 8. Additionally, in November 2020, she informed Mr. Ross that DCS was required to file for termination of parental rights in December 2020, and placed a referral for father engagement services for him, which he could do while incarcerated. *Id.* at 3; *see also* dkts. 62-11; 63-8.

In March 2021, Defendant Heidi Clossin became the FCM for the children's case. Dkt. 63-8 at 1. Ms. Clossin visited Mr. Ross at the Marion County Jail on May 6, 2021, and informed him the termination of parental rights hearing was scheduled for May 20, 2021. *Id.* She told him he could participate virtually or with a transportation order. *Id.* Mr. Ross requested telephonic or virtual visitation with the children, and Ms. Clossin stated she would work on it. *Id.* at 2. She then contacted the Marion County Jail regarding the process to set up the visits. *Id.*

Defendant Kristin Hannon then became the FCM for the children's case in May 2021. Dkt. 63-10 at 1. During her time in the position, Mr. Ross moved facilities multiple times. *Id.* at 2. This sometimes caused delays in scheduling visitation; for example, while he was at the RDC in June 2021, no visitation of any kind was allowed by the facility. *Id.*

On July 15, 2021, after Mr. Ross had been transferred to Marion County Jail, Ms. Hannon and her supervisor discussed in-person visitation at the jail with the children. *Id.* They determined it was not in the best interests of the children due to their age, lack of close relationship with

Mr. Ross, and because T. R. was still struggling behaviorally and was "sensitive to triggers." *Id.* However, the same day, DCS approved Mr. Ross to call in during Ms. Andreasen's supervised visit to speak with the children. *Id.*

The next day, Ms. Hannon visited Mr. Ross at the jail and informed him that moving forward he would continue to be allowed to call the children during Ms. Andreasen's supervised visits to speak with them. *Id.* He stated that he did not want the children to see him in jail, so he was happy with this arrangement. *Id.* at 2-3. Mr. Ross called into the next supervised visit on August 10. *Id.*; dkt. 62-12.

Mr. Ross was transferred to Clinton County Jail in August 2021. Dkt. 63-6 at 3. On August 26, Ms. Hannon and Mr. Ross had a virtual meeting where Mr. Ross expressed interest in participating in therapy and father engagement services and continuing virtual visits with the children. Dkt. 63-10 at 3. Ms. Hannon and "the child and family team" discussed continuing the virtual visits with both parents together and determined it was in the best interests of the children to do so. *Id.* In September 2021, Ms. Hannon sought guidance from the Clinton County Jail on how to begin virtual visits for Mr. Ross and on September 30, 2021, she received approval from the U.S. Marshals to do so. *Id.* at 3, 6-8.

Ms. Andreasen's supervised visitation provider placed a hold on providing services to her in September 2021 due to behavioral issues, so Ms. Hannon pursued a new provider. *Id.* at 4. However, the new provider canceled the referral the next month, due to Ms. Andreasen not participating and the inability to include Mr. Ross virtually in her supervised visits. *Id.* A third provider accepted the referral but continued to struggle to ensure Ms. Andreasen arrived on time to visits, which "inhibited Mr. Ross's ability to visit with the children on multiple occasions." *Id.*; *see also* dkt. 62-13 at 2. Thus, on November 4, 2021, Ms. Hannon directed the provider to continue

the visits with Mr. Ross in Ms. Andreasen's absence. Dkts. 63-10 at 4, 62-14. Mr. Ross called into visits on November 16, and November 18, 2021. Dkts. 62-15, 62-16.

Throughout the pendency of the children's case, the state court did not provide specific orders regarding visitation between the children and Mr. Ross during his periods of incarceration. Dkts. 62-4, 62-17, 62-18, 62-19, 62-20, 62-21, 62-22. On October 21, 2021, the state court terminated Mr. Ross and Ms. Andreasen's parental rights. Dkt. 62-23.[1]

### III.
### Discussion

Mr. Ross contends Defendants violated his Fourteenth Amendment rights by denying him visitation with his children from approximately August 2020 to November 2021. Defendants contend they did not violate his rights, or at a minimum, they are entitled to qualified immunity with respect to such a claim.

Noncustodial parents have a constitutionally protected interest in visiting their children as part of a parent's Fourteenth Amendment right to the "care, custody, and control" of their children. *Terry v. Richardson,* 346 F.3d 781, 784 (7th Cir. 2003) (citing *Troxel v. Granville,* 530 U.S. 57, 66 (2000)). This right, however, "is not absolute, but must be balanced against the state's interest in protecting children from abuse." *Hernandez ex rel. Hernandez v. Foster,* 657 F.3d 463, 478 (7th Cir. 2011) (citation omitted).

Further, "qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff]

---

[1] The record reflects that while the order terminating parental rights is dated October 21, 2021, Ms. Andreasen did not learn of the termination until November 18, 2021, after the visitation, and Mr. Ross was not informed until November 30, 2021. Dkts. 62-16, 1 at 7.

must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013).

A right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)).

Here, the undisputed facts do not support Mr. Ross' contention that his constitutional rights were violated. The state court granted wardship of the children to DCS in October 2019. Dkts. 62-4. Mr. Ross was incarcerated at the time and frequently changed his mind regarding whether he wanted to pursue visitation of any kind with the children while in the jail. Dkts. 63-1, 63-7 at 2. However, between March and August 2020, when Mr. Ross was released, Ms. Nelson facilitated a telephonic visit on June 18, and two in-person visits on June 30 and August 19. Dkts. 62-6, 62-7, 62-9. After Mr. Ross was reincarcerated, Ms. Nelson encountered issues with communicating with him caused by the Marion County Jail, as well as additional concerns related to changed visitation processes due to the COVID-19 pandemic. Dkt. 63-7 at 2.

Ms. Clossin served as the FCM for only a few months. Dkt. 63-8 at 1. During that time, Mr. Ross requested telephonic or virtual visits with the children, and she contacted the jail to inquire about the process to facilitate those visits. *Id.* at 2.

Ms. Hannon then served as the FCM for the remainder of the children's case. Dkt. 63-10 at 1. She facilitated visitation over the phone for Mr. Ross and the children multiple times while he

was incarcerated. *Id.* at 2-4; dkts. 62-12, 62-14, 62-15, 62-16. While visitation did not occur in person during his incarceration because it was determined not to be in the best interest of the children for various reasons, the record is clear that not only did visitation occur, but Ms. Hannon continuously addressed issues that caused delays or cancelations to some visits. Dkt. 63-10 at 2-3.

Thus, because the record shows that all defendants facilitated, or were in the process of facilitating, visits between Mr. Ross and his children, he has failed to support his claim that the defendants violated his Fourteenth Amendment rights by denying him such visitation.

Mr. Ross has also failed to cite any comparable case law to suggest that the defendants violated a clearly established right. The Seventh Circuit has found that permanent or arbitrary bans on visits with family members by prison officials may violate the Constitution. *Easterling v. Thurmer,* 880 F.3d 319, 323 (7th Cir. 2018). It has also discussed the balancing required between the state's interest in protecting children and the fundamental right to familial integrity when allegations of abuse exist. *Brokaw v. Mercer Cty.,* 235 F.3d 1000, 1019 (7th Cir. 2000). However, Mr. Ross has provided no support that he was entitled to any further visitation when: (1) the state court adjudicating his children's neglect case had granted DCS wardship of the children, (2) the defendants were DCS employees acting within that authority, (3) he was incarcerated, (4) the limitations placed on visitation were either due to prison policies or determinations that certain means of visitation (i.e., in person) were not in the best interests of the child, and (5) alternative means of visitation were facilitated. The defendants are therefore entitled to qualified immunity.

IV.
Conclusion

The defendants' motion for summary judgment is **GRANTED**. Dkt. [61]. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 8/27/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

TYRONE ROSS
52921-509
LEE - USP
LEE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 305
JONESVILLE, VA 24263

All Electronically Registered Counsel